# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **DARREL LEWIS** | * | **CIVIL ACTION NO. 09-0932** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Darrel Lewis, born September 19, 1960, filed an application for supplemental security income on July 28, 2006, alleging disability since December 31, 2005, due to knee problems and lupus.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Iberia Comprehensive Community Health Center dated May 8 to June 26, 2006**.  Claimant was seen for skin lesions on his forehead, behind his ears, and on his left upper arm.  (Tr. 123).  His lesions became worse with perspiration.  The impression was lupus.  (Tr. 120).  He was prescribed Lotrisone.  (Tr. 118).

**(2) Records from LSU University Medical Center ("UMC") dated March 15 to August 16, 2006**.  Claimant was seen for skin lesions, numbness to the tips of his fingers, and alcohol abuse.  (Tr. 129-40).  X-rays showed peribronchial cuffing, which might indicate chronic inflammatory disease or reactive airway disease.  (Tr. 140).  His kidneys were mildly enlarged.  (Tr. 139).  The diagnoses were cutaneous lesions, elevated liver enzymes, and alcohol abuse.  (Tr. 135, 138).  He was instructed to stop drinking, and was referred to rehab.  (Tr. 133).

**(3) Consultative Examination by Dr. Sujal Shah dated September 9, 2006**.  Claimant complained of left knee pain since a motorcycle accident in the 1980s and a gunshot wound in the left leg.  (Tr. 144).  He had difficulty walking,

and used a cane.  He had smoked one pack of cigarettes a day for 30 years.

Claimant was able to dress and feed himself; stand about 10 minutes at a time; stand for half an hour in an eight-hour period; walk about 25 to 50 feet, and had no difficulty sitting.  He could lift up to eight pounds.  He did not drive a car or do any household chores.

On examination, claimant was 5 feet 4 inches tall, and weighed 208 pounds. (Tr. 145).  His blood pressure was 124/77.  He ambulated with moderate difficulty, and needed a cane to stand up.  He complained of constant pain.

Approximately 10% of claimant's scalp and behind his ears were affected by dark lesions secondary to lupus.  His left knee appeared to be locked when he walked, and an assistive device was necessary.

Knee range of motion was 150 degrees on the right and 50 on the left. Claimant's upper extremities showed atrophy, especially on the left.  His motor strength was 5/5 on the right and 4/5 on the left.  Cerebellar exam was negative.

Dr. Shah's impression was lupus, with some skin manifestation which appeared  under control, and left knee problems with evidence of scarring and atrophy, making it difficult for him to walk or stand for any length of time.  He opined that claimant should remain sitting in his next jobs.

**(4) Physical Residual Functional Capacity ("RFC") Assessment dated September 26, 2006**. Dr. Joseph Michalik determined that claimant could lift/carry less than 10 pounds. (Tr. 148). He could stand/walk at least two hours in an eight-hour workday. He could sit about six hours in an eight-hour workday. He was limited in his lower extremities due to his left knee problems. He could occasionally climb ramps/stairs, kneel, crouch, and crawl; frequently balance and stoop, and never climb ladders/ropes/scaffolds. (Tr. 149).

**(5) Records from LSU Health Care dated June 15, 2007 to March 7, 2008**. On June 21, 2007, claimant was diagnosed with lupus panniculitis with overlying lupus profundus. (Tr. 171). He was prescribed Plaquenil. (Tr. 162-64).

On March 7, 2008, claimant complained of left knee locking. (Tr. 161).

**(6) Records from UMC dated March 11, 2008**. Left shoulder x-rays showed osteoarthritic changes in the AC joint. (Tr. 180). The shoulder joint appeared normal. Left knee x-rays revealed diffuse degenerative osteoarthritic change with evidence of previous trauma. (Tr. 182).

**(7) Records from Iberia Comprehensive Community Health Center dated May 8, 2006 to May 5, 2008**. Claimant was seen for skin lesions on his forehead, behind his ears, and on his left upper arm, for which he was prescribed

Lotrisone cream. (Tr. 191). He also complained of left knee pain and stiffness, for which he was prescribed Toradol, Voltaren and Celexa. (Tr. 186-88).

**(8) Claimant's Administrative Hearing Testimony**. At the hearing on February 21, 2008, claimant was 47 years old. (Tr. 40). He testified that after his onset date, he had returned to working as a front end loader. (Tr. 30-31, 35). He reported that he made close to $8,000.00 in 2007. (Tr. 32).

Claimant testified that he only worked seasonally in the sugarcane industry. (Tr. 33). He worked in the fall during grinding season. (Tr. 33-34). His work occurred at night. (Tr. 34).

Regarding complaints, claimant testified that he used only his right foot because of his left knee problems. (Tr. 35, 38). He complained that his skin became irritated in the sun. (Tr. 38). He reported that he missed work sometimes because of his leg problems and lupus. (Tr. 36). He said that he went to a doctor in New Orleans for lupus once or twice a month. (Tr. 38).

Claimant testified that he had attended school through the seventh grade.[1] (Tr. 37). He stated that he could not read and write, and had some problems with math.

**(9) Administrative Hearing Testimony of George R. Smith, Medical**

---

[1] In the Disability Report, claimant indicated that he had completed the 10th grade. (Tr. 98).

**Expert**.  Dr. Smith testified that if claimant's lupus diagnosis was correct, then he should avoid the sun for any length of time.  (Tr. 28-29).  Based on Dr. Shah's description of claimant's knee, Dr. Smith opined that claimant would be restricted from carrying more than 10 pounds, bending, stooping, crawling, working at heights, and climbing ladders or scaffolding.  (Tr. 29).  Dr. Smith also stated that claimant should sit, stand or stand/walk no more than two hours in the workday.

**(10) Administrative Hearing Testimony of Richard A. Galloway, Vocational Expert ("VE")**.  The ALJ asked Mr. Galloway to assume a 47-year-old claimant without a high school education, who could not read and write; could lift 20 pounds occasionally and 10 pounds frequently; had limited ability to crawl, stoop, and balance; could not work in direct sunlight; could stand and walk two to three hours of an eight-hour day; could sit for six out of eight hours with normal break periods; was restricted from climbing ladders, ropes, and scaffolds, and could not work at unprotected heights.  (Tr. 40-41).  Given that hypothetical, the VE testified that claimant could return to work as a front end loader as he had performed it.[2]  (Tr. 41-42, 95).  Mr. Galloway also opined that claimant could work as a hand packer or bottle line attendant, a sedentary job, of which 790 positions were available statewide and 3,886 nationally; assembler, of which there

---

[2] Mr. Galloway testified that front end loader was classified as medium work activity, but "may be less than that" as claimant had performed it.  (Tr. 42).

were 845 jobs statewide and 176,090 nationally; production inspector, of which there were 91 jobs sedentary jobs statewide and 9,343 nationally, and sedentary nut sorter, of which there were 72 positions statewide and 9,342 nationally. (Tr. 43-44).

In response to the ALJ's questioning, Mr. Galloway testified that an employer would normally tolerate an employee's missing two or three days a month during the first month, but not thereafter. (Tr. 44-45). When the ALJ asked the VE to assume that a claimant had to take frequent breaks because of exacerbations of pain or fatigue, Mr. Galloway answered that such claimant would be unemployable. (Tr. 45-46).

**(11) The ALJ's Findings are Entitled to Deference**. Claimant argues that the ALJ erred in finding that he could return to his past work, although he found the work was never performed.

Claimant does not dispute the ALJ's finding that he could perform the full range of sedentary work. [rec. doc. 8, p. 5]. Rather, he argues that the ALJ erred in finding that he could return to his past work as a front end loader. Specifically,

he asserts that the ALJ erroneously determined that he could do this work at substantial gainful activity ("SGA") level.

Claimant argues that vocational expert described the job of front end loader as medium work, which was inconsistent with the consultative examiner's opinion requiring that claimant be allowed to sit at his next jobs. [rec. doc. 8, p. 7]]. Mr. Galloway testified that the work of a front end loader was classified as medium work in the Dictionary of Occupational Titles. However, he noted that "[i]t may be less than that" as claimant had performed it. (Tr. 42).

Under the Social Security regulations, past relevant work is defined as work that has been done within the last 15 years, lasted long enough for the person to learn to do it, and constituted "substantial gainful activity." *See* 20 C.F.R. § 404.1565(a); 20 C.F.R. §416.960(b)(1). "Substantial gainful activity" is defined as work activity that involves doing significant physical or mental activities, "even if it is done on a part-time basis," and work that is done for pay or profit, whether or not a profit is realized. *See id*. § 404.1572(a), (b).

A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, *either as the claimant actually performed it* or as generally performed in the national economy. (emphasis added). 20 C.F.R. § 416.960.

In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, *either as the claimant actually performed it* or as generally performed in the national economy.  (emphasis added).  *Id.*

In response to the ALJ's hypothetical in this case, the VE testified that claimant could return to his job as a front end loader *as he had performed it.*  (Tr. 42).  This is specifically allowed under the Social Security Regulations.  In any event, the VE identified a significant number of other jobs that claimant could perform with his limitations.  (Tr. 43-44).  Thus, the ALJ did not err in finding that he could perform his past relevant work as a front end loader.  (Tr. 17).

Additionally, claimant argues that the ALJ erred in failing to include his impairment of borderline intellectual functioning ("BIF") in the hypothetical to the vocational expert.  [rec. doc. 8, p. 8].  However, there is absolutely no evidence in the record that claimant had BIF.  As the ALJ's hypothetical to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, (including the inability to read and write) and the claimant or her representative had the opportunity to correct deficiencies in the ALJ's question,

9

the ALJ's findings are entitled to deference. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT,**

**EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed October 8, 2010, at Lafayette, Louisiana.

*C. Michael Hill*

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE